If it pleases the court, your honors, I am attorney Tom Gill, appearing on behalf of my client, Glenn Hagen. And your honor, if I might, I'm going to break my argument into two parts. One has to do with the law that controls the case that we're talking about. And the second part has to do with the case that deals with the law, if that makes sense. Your honor, there are several factors in connection with the law in this matter. There is government code section 12940N, which focuses on an interactive process in connection with disability cases. And then there are four cases, Claudio, Weisinger, Scotch, and Nedaf-Rarab, which are the focal cases that are relied upon in disability matters. Counsel, what I'm thinking about that concerns me is a little different from the way you're laying it out. Let me tell you what's on my mind, in case you can help me. Two things. Number one, well, actually three things, but number one, it looks like there was no adverse employment action. They told him he was going to be RIFT, but he didn't get RIFT, because before he got RIFT, he applied for disability. Number two, you can't bring the discrimination case unless you're a qualified individual. And it seems to me that he'd be stopped from claiming to be a qualified individual, because he claimed he could not work in order to get disability. So I have trouble figuring out how he can get to first base. The third thing is the issue of accommodation comes up in the briefs. And as I understand California law, there's no discrimination for failure to provide reasonable accommodation unless the employee asks for some accommodation, and he didn't. But you don't get to that if the first two are controlling, and I don't see why they're not. I mean, if they never did fire him, he applied for disability and got disability. And if the disability means he can't do his work, then I don't see how he gets to first base on disability discrimination. Well, Your Honor, the disability discrimination and being fired simply doesn't hold up to the facts. If you put it more generally, that wouldn't be enough. You can discriminate against somebody who's disabled without firing them. But the facts of this case are my interest. So explain what I'm missing. Your Honor, the plaintiff here suffered several adversarial actions in terms of what occurred to him. The actions have to do with being terminated in a letter dated March 10. And has to do with his not knowing that he was not terminated and believing that he was terminated because no one told him he wasn't terminated. Well, what about the effective date on the letter on March 10? The effective date was March 24. So in that 10 days, he applied for disability. Now, isn't that an intelligent election that he made to apply for disability? In which he says, I can't work anymore, so I'm disabled. So he applies for disability. He gets disabled. Now, why is that discriminatory? What is discriminatory about sending him a notice of a riff two years after he had already tried another job that they made available to him and he couldn't do that one? So what's discriminatory about his receiving a letter saying in two weeks you're going to be riffed? Well, Your Honor, first of all, NCR, his employer, did not make the decision insofar as his disability. Well, the carrier, the insurance carrier. Yes, yes, the carrier did. At no time, and I think that's what this case is about, at no time did NCR engage in any interactive dialogue, which the legislature says in and of itself is a violation of the law. Well, where was there an opportunity to do that? Because on March 13, he was told, here's another open position. If you're interested, you can pursue that one. He never responded to that at all, but instead he filed papers in which his doctor said this person not only can't work now, but we never, ever expect him to be able to return to work. So I don't understand what an employer is supposed to engage in when someone's medical records come forward and say this person is permanently unable to work. Well, some of those doctors said for a month, some said for a year, so there was a disagreement over the length of time that he would be out on disability. Also, NCR knew, as is stated in the brief, for over two years that Mr. Hagen had been disabled, but told everyone, don't say anything about it or you're going to be fired. Well, in the past, I mean, I'm somewhat sympathetic to what you're saying about the pre-disability leave things, because then there is evidence that people knew that he had a problem and they maybe didn't do quite enough about it. But I'm not sure where that gets you, because he continued to be paid up until the point when he and his doctors claimed that he would never be able to work again. So he worked as long as he was capable of working, is what it appears from the record. Your Honor, but that stopped at a certain point in time. It stopped in March of 2006. And that commenced the loss of income of some $5,000 a month. If he was qualified to work, and that's, I guess, where we're parting, maybe where my issue comes in, because you have a physician saying, I do not anticipate return to work, given the patient's profound memory limitations. And there were other doctors similarly who at best thought, you know, maybe a year. But it was clear by the end of that year that he was never going to get any better. Well, Your Honor, that comes back to the interactive dialogue. And it never having occurred, no one ever knew whether or not, in fact, he would never improve. What does it matter? I mean, there are sometimes a person appears to have Alzheimer's disease, a senile dementia, but actually it isn't. A B12 deficiency will sometimes look like a senile dementia. A person gets daily B12 shots for a while, and it turns out it wasn't a senile dementia after all, just a vitamin deficiency that was remedied in time. But in order to have disability discrimination, you have to be able to say, I was able to work, and they wouldn't let me work because I had a disability that did not prevent me from being able to work. I was still a qualified individual.  And here, once he and his doctors say he's not able to work, I don't see what the dialogue would accomplish. It turned out that he did, in fact, have early onset Alzheimer's, and he never did become able to work. All the dialogue in the world wouldn't change the tragedy of his unfortunate disease. That's Monday morning hindsight in terms of whether or not he would ever be able to work. Sometimes we call Monday morning hindsight prejudice. True. However, at no time did NCR ever take a moment to engage in an interactive dialogue with him or his physicians, which is the problem here. We're trying to follow law. We're trying to reflect what the legislature requires of every employer, which is it is a breach, a cause of action in and of itself to not engage the employee in the interactive dialogue, which never, ever occurred. How would you categorize the open position email in a different division? On March 13th, he was sent an email concerning an open position in a different division. Would that have, if he had decided to respond to it, would that have qualified as part of the interactive process? If he had, if that email... Well, he's the one who didn't pick up the ball, it seems like. Well, Your Honor, that would assume that he was not then engaged with his doctors being evaluated. That would assume that he would be eligible at that moment in time to take a position. He had only just been told that he might be suffering from dementia. And that's what held up that process. So by the time it came back to him, his turn, it was too late. The position was no longer available. So that was the only position that was ever offered. I don't know how best to qualify what was incumbent upon the employer that the employer never did. For instance, the employer says, well, we attempted to engage in an interactive dialogue because we gave him disability. Well, that's not true because it was MetLife that qualified him for disability. So we have an individual who, by the way, was told he was terminated. Told he would be effective on the 24th of March. Never was told he was not an employee. And so continued on doing the only avenue he had left, which was to proceed with disability. Which, by the way, does not conflict with law. You can be on Social Security disability and still qualify for state disability or private disability. I think we understand the basics of your position. Would you like to save your last minute and a half for a rebuttal? I would, Your Honor. Good morning, Your Honors. May it please the Court, Jason Dawson with Gordon and Reese on behalf of the Respondent NCR Corporation. I'll just take a few minutes of your time because I believe, Your Honor, you hit the three main issues right on the head. There was no adverse action here as confirmed by the RIF notice. He was given a period of ten days, business days, to engage in some other activities, find another job, accept a severance package, go with his right management consultants. He chose his own option to apply for disability. At that point, the company could not terminate him as was scheduled, and they had to keep him as an employee while that decision was being processed by the disability insurer. Ultimately, he's approved for disability. There's no adverse employment action here. The next one, he's not a qualified individual. We went over that. The doctors continuously and systematically declare him unable to work, be it for a period of a month, be it for a period of a year. During all those times, the communication is this individual can't work. He's receiving his disability benefits. At no time did Mr. Hagan ask for an accommodation, and that's the key. Well, it is and it isn't. That's the one aspect of the case that bothers me, although I don't see what damages could flow from it. It does appear that people in the company knew that he was having significant memory problems in the couple of years actually preceding his last day of work, and nothing really was done to confront that in a real sense of saying, hey, you're having problems, and yet the company was well aware of it. And that seems like a situation in which there was enough notice that some interactive process might have been called for under a California law, but I'm not sure where that takes us because he continued to work and be paid, and so I'm not really sure what damages would flow from that earlier period of frustration. I understand exactly where Your Honor is going with that because, you know, as a defense attorney knows, the easiest way to lose a summary judgment motion is to raise a disputed issue of material facts, and looking at that, there is certainly a dispute that could be raised by NCR as to what was known or not known, but the key is that's not a material fact. It's not material as to whether or not he was discriminated against, whether or not there was an adverse employment action. I hate to say it, but it just doesn't matter in the context of what the issues are in this lawsuit. Mr. Hagan claims I was terminated because I had a disability. The facts say otherwise. And on the issue of an employer's obligation or the employee's obligation, I want to turn directly to what the legislature says. 12940 subsection N on this issue of failure to engage, the legislature states there's liability for failure to engage in interactive process, and I underline this part, I'm quoting directly, in response to a request for reasonable accommodation by an employee or applicant. That's exactly what the legislature says. So Mr. Gill says we're required to follow the law. Employers are required to follow the law. That's absolutely true. The employer here followed every aspect of the law. Mr. Hagan is the one who never requested any interactive process, never requested an accommodation. In fact, he was accommodated with this 100 percent full pay, 26 weeks of disability leave, then made the additional decision to take long-term disability, and at that point his termination ended. His termination ended? I mean his employment ended. Okay. I don't know, I don't think this is material, what I'm about to ask you, but I'm just curious. There are all kinds of things that can lead to memory problems. I mentioned one, the B12 deficiency. Another could be obstructive sleep apnea. There are innumerable other vitamin and mineral deficiencies. I assume he got all the medical examinations to rule these things out. I would assume so, too, Your Honor. He's being seen by a very well-respected neurologist. I read neuropsychologists, and what they do is determine whether a decline, an apparent decline in intelligence is consistent with the onset of senile dementia or some other cause of declining intelligence. But they're not medical doctors, and they don't rule out the alternative possible causes. I'm just assuming that he got that done, but I don't know. Also, Your Honor. Well, he did have, there is material from his internist who's a physician, Dr. Upton. So presumably that. Right. And the arguments from the other side do raise that. There's a neurologist as well. Okay. It does raise a very delicate issue if we were to follow this down that slippery slope because an employee starts exhibiting memory loss to say that the employer knew that the employee was disabled, that's quite a stretch. And that's not what happened here. But again, it does get into the un-material aspects of the case. Was there any additional time I have for rebuttal? No, you don't get any rebuttal. You're the respondent, so this is it. If you have anything else you need to tell us, this would be the time. I think I saw the story, and the story is well understood, Your Honor. Thank you. Thank you. However, Mr. Keel has the opportunity for rebuttal. Thank you, Your Honor. Your Honor, you really hit the nose on the head when you said, hit the nail on the head, when you said that it troubles you that he was unaware. It troubles you that the employer knew for over two years and did nothing. What really should trouble everyone here. Knew what? All they knew was his performance was bad. No, Your Honor. They knew that he couldn't remember, if you'll pardon the expression, it's in the brief, shit. I remember that it was, but I'm thinking for a layman who did not have a hobby of reading medical journals, they might think, gosh, there are so many reasons why a person's mental performance declines this way. I suppose the most common might be domestic difficulties, not even medical. Your Honor, the company at that point had a legal obligation to inquire and to send him. Staying up too late at night because he's, for some reason, did not go to bed when he should. To send him for an examination. Well, counsel, my problem is, I follow you so far, but since he stayed employed until the time when he himself said that he was disabled from working, I don't see that any damages flowed from failing to engage in that process. Your Honor, Section 12940N says that the company is bound by law to do an interactive dialogue. It's not a question of whether we will or not. And every month this year, he is losing 5,000 something dollars per month because his disability expired. There's your damages. And if we walk away from here today telling everyone that the legislature doesn't matter, it doesn't matter that it says that they have the obligation to engage in an interactive dialogue, and to not do so is, in and of itself, not only a cause of action, it's a violation of the law. And Hagan is now losing 5 grand a month. I think that amounts to disability discrimination. Thank you. Thank you, counsel. The case just argued is submitted, and we appreciate very much the arguments of both counsel. We'll take about a ten-minute break and return for the remainder of the calendar.
judges: Goodwin, Kleinfeld, Graber